UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 3:10-CR-56-TAV-HBG |
| ERIC STRIPLING, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendant's pro se motion for home confinement [Doc. 406] and the motion for compassionate release filed on defendant's behalf by Federal Defender Services of East Tennessee [Doc. 411]. The United States has filed a response [Doc. 416], and defendant has filed a reply [Doc. 434]. The matter is now ripe for adjudication. For the reasons set forth more fully below, defendant's motions will be **DENIED**.

### I. Background

On February 14, 2011, defendant pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute five (5) grams or more of a mixture and substance containing a detectable amount of cocaine base [Docs. 121, 123]. Defendant, who was deemed a career offender [Doc. 121], received a sentence of 188 months' imprisonment, followed by eight (8) years of supervised release [Doc. 218].

Defendant is housed at FCI Butner Medium II, which currently has zero (0) active cases of COVID-19 amongst the inmates, two (2) active cases amongst the staff, and 860 staff and 1,803 inmates have been vaccinated against COVID-19. COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited April 12, 2021). Defendant is forty-five (45) years old and medical records establish that he suffers from a variety of ailments, including, but not limited to, type II diabetes, hypertension, and long-term use of anticoagulants because of a history of blood clots [Doc. 411-4]. Defendant is scheduled for release on April 10, 2024. Inmate Locator, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited April 12, 2021).

## II.    Legal Standard

A court generally lacks "the authority to change or modify [a sentence, once imposed,] unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (citing *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). The First Step Act of 2018's amendment of § 3582(c)(1)(A) revised one such exception. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). Prior to the First Step Act, a district court could grant relief under § 3582(c)(1)(A) only on motion of the Director of the Bureau of Prisons. Now a court may modify a defendant's sentence upon a motion by a defendant if the defendant has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or after the lapse of thirty (30) days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

If the defendant surmounts this preliminary hurdle, the Court may grant a sentence reduction "after considering the factors set forth in section 3553(a) to the extent that they are applicable" if it finds:

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id*. Defendant seeks relief under § 3582(c)(1)(A)(i) [Doc. 411].

If the exhaustion requirement is satisfied, courts must then follow the statute's three-step test:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, 980 F.3d 1098, 1107-08 (6th Cir. 2020) (internal citations omitted). "In cases where incarcerated persons [as opposed to the Bureau of Prisons] file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry

3

and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id.* at 1111. In considering a compassionate release motion, "district courts may deny compassionate release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others" but must "address all three steps" if granting such a motion. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

**III. Analysis**

    **A.  Section 3582(c)(1)(A)'s Preliminary Threshold to Relief: Exhaustion**

The Court examines first whether defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement, which is a mandatory prerequisite to consideration of a compassionate release request on the merits. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020). "When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'" *Id.* at 834 (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017)). The only exceptions to such a mandatory claim-processing rule are waiver and forfeiture. *Id.* (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

The United States concedes that the exhaustion requirement has been met [Doc. 416]. Thus, the Court may consider the merits of defendant's request.

    **B.  § 3553(a) factors**

As noted above, the Court need not consider all three statutory prerequisites if any one would serve as a basis for denial. *Elias*, 984 at 519. In this instance, the government concedes that defendant's specific medical condition, in conjunction with the ongoing

4

COVID-19 pandemic, satisfies the extraordinary and compelling requirement [Doc. 416 at p. 9], so the Court focuses its attention on the §3553(a) factors. "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *United States v. Jones*, 980 F.3d 1098, *16-17 (6th Cir. 2020) (internal citations omitted). The "overarching" inquiry under § 3553(a) is whether the sentence imposed is "sufficient, but not greater than necessary, to comply with the purposes" outlined in § 3553(a) paragraph (2). § 3553(a); *see also Pepper v. United States*, 526 U.S. 476, 491 (2011). To this end, § 3553(a) directs the Court to consider the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed, the kinds of sentences available, the applicable guideline range, any pertinent policy statement, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims. § 3553(a); *see also Pepper*, 526 U.S. at 491.

The Court begins with the criminal conduct at issue in this case. The Presentence Investigation Report ("PSR") describes defendant's conduct as follows:

> Beginning in 2009, the United States submits that law enforcement made several purchases of crack cocaine from co-defendant Katrina Clemons at or near her apartment in the Lonsdale community of Knoxville, Tennessee. The defendant participated in two of those controlled purchases in March 2010. On March 16, 2010, the confidential source reported that the defendant was in Clemons' apartment and handed the crack to Clemons who then handed it to the confidential source. The defendant's voice is audible on the recording of the transaction. On March 23, 2010, the confidential source reported that the defendant actually conducted the transaction inside Clemons' apartment. The recorded call that set up the transaction included a statement by Clemons

> that she was not home but that "he" was there and that "he" would "take care
> of you." The recording of the transaction confirms that a male conducted the
> transaction with the confidential source. In fact, both the defendant and the
> confidential source spoke with Clemons over the telephone during the
> transaction, and this is also audible on the recording of the transaction.
> Additionally, agents observed the defendant go into the apartment just before
> the confidential source went in. Each transaction involved more than five (5)
> grams of crack cocaine and the total combined amount was 19.7 grams.

[PSR at ¶ 17]. Defendant was classified as a career offender because of his extensive criminal history [*Id.* at ¶ 30]. Defendant's past criminal convictions (a mix of misdemeanors and felonies) include multiple drug crimes, criminal trespass, and aggravated assault [*Id.* at ¶¶ 35-40]. The Court notes that defendant was on parole when he committed the instant offense in 2009 [*Id.* at ¶ 42]. Prior to this 2009 violation of defendant's parole, he had been placed on probation for state crimes and had that probation revoked twice, once on May 28, 2004, and again on April 12, 2005 [*Id.* at ¶ 38].

This was a serious drug crime, and the fact that defendant was on parole when he committed only increases the seriousness of the offense. The Court took all of this information, as well as all the other evidence of record, into account when fashioning its sentence, and in doing so, it fashioned a sentence which was sufficient, but not greater than necessary, to reflect, among other things, the serious nature of the offense, the need to promote respect for the law and provide just punishment, the need for adequate deterrence both as to this defendant and to the public at large, and to protect the public from further crimes by this defendant. Defendant's multiple violations of probation/parole reinforce the need to promote respect for the law and to protect the public from further crimes by this

6

defendant. In light of defendant's extensive criminal history, which includes at least one violent offense, the need to protect the public is further heightened.

As the Court noted above, defendant was sentenced to a term of imprisonment of 188 months [Doc 218], and, taking into account good credit time, he is due to be released April 10, 2024, approximately 48 months from now. The Sixth Circuit has ruled that courts may consider the amount of time a defendant has served when ruling on a motion for compassionate release. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) ("[T]he need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). While the defendant has served a significant portion of his sentence, given the serious nature of the offense and the need to protect the public from further crimes by defendant, the Court finds that the § 3553(a) factors weigh against releasing defendant in this instance.

The Court is aware of defendant's medical condition, and the risk that the ongoing pandemic poses to people with similar conditions. That risk is somewhat lessened by the fact the Bureau of Prisons has begun vaccinating inmates against COVID-19, and, as the Court noted above, 1,803 inmates at the facility where defendant is housed have already been vaccinated. The Court in no way diminishes the risk COVID-19 continues to present, but the Court must still balance the § 3553(a) factors against all other relevant evidence.

In reaching this decision, the Court has considered the parties' filings, including defendant's medical records, the PSR, the § 3553(a) factors and other relevant law, and the

7

record as a whole. While the Court recognizes defendant's medical condition, that is only part of the compassionate release calculus. On the record before the Court, the sentencing factors weigh against early release, and defendant's motion for compassionate release [Doc. 411] will be **DENIED**.

IV. **Motion for Home Confinement**

Defendant has also filed a pro se motion asking the Court to compel the Bureau of Prisons to place defendant on home confinement pursuant to the CARES Act [Doc. 406]. However, the Sixth Circuit has held that the CARES Act vests sole authority to grant home confinement with the Attorney General and the Bureau of Prisons, not with the District Court. *See* Pub. L. No. 116-136, 134 Stat. 281 (2020) (expanding the power of the BOP to place prisoners in home confinement); *see also* 18 U.S.C. § 3624(c)(2); *United States v. Brummett*, No. 20-5626, 2020 U.S. App. LEXIS 26427, at *5 (6th Cir. Aug. 19, 2020). Accordingly, as the Court lacks the authority to grant defendant the relief he seeks, the motion [Doc. 406] will be **DENIED**.

V. **Conclusion**

Accordingly, for the reasons set forth more fully above, defendant's motion for compassionate release [Doc. 411] and motion for home confinement [Doc. 406] are **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE